Burke, J.
 

 The prime question presented is whether the State of New York in the performance of a sovereign pursuit is liable for the appropriation of facilities of a utility company which lay in public rights of way.
 

 This action consists of two claims brought by a private water company against the State of New York, one for the appropriation of interests in land and other property, and the second for breach of contract. The facts are not in dispute. The State of New York, on behalf of the Thruway Authority, acquired certain streets and abutting lands in the City of New Rochelle, the Village of Pelham Manor and the Village of Ardsley pursuant to section 347 of the Highway Law. The New Rochelle Water Company had private easements, franchises, water mains, hydrants, branch lines, valves, blow-offs and appurtenances in these streets and abutting lands. The State cut through these various streets and destroyed or removed a number of houses in the construction of the Thruway. In so doing, bulldozers also removed and destroyed the pipe lines, service branches and hydrants, the subject matter of this claim. The water company has, however, conceded that the pipes removed and destroyed, had they been left abandoned, would have remained in those streets to service no one, and the hydrants to protect no one, since the houses for which they provided water were either removed or destroyed and the pipes had no salvage value. It is stipulated that the salvage value of the hydrants which the claimant was not permitted to salvage is $411.37. The State built three stretches of new pipe line to maintain the continuity of the water supply to the consumers not affected by the taking. This cost was borne by the State pursuant to section 346 of the Highway Law.
 

 Claimant contends that the destruction of its property is an appropriation demanding just compensation and is not a mere relocation, the cost of which is to be borne by the State. The State maintains that it is under no obligation to compensate a
 
 *291
 
 public utilities company for facilities in a street which are retired from service by reason of a taking of the street for highway purposes. The Court of Claims and the Appellate Division held that the water company was entitled to damages for the State’s appropriation based upon the original cost less depreciation.
 

 The obligation of the State to pay the cost of relocation or the value of retired facilities did not exist at common law. In
 
 New York City Tunnel Auth.
 
 v.
 
 Consolidated Edison Co.
 
 (295 N. Y. 467), where the construction of approaches to the Queens Midtown Tunnel made it necessary to relocate certain public utility facilities maintained by Consolidated Edison Co. in public streets within the area of the approaches, this court said (p. 474):
 

 ‘ ‘ The ‘ fundamental common-law right applicable to franchises in streets ’ is that a utility company must relocate its facilities in the public streets when changes are required by public necessity.
 
 (Transit Comm.
 
 v.
 
 Long Island R. R. Co. [Bell Ave.
 
 case], 253 N. Y. 345, 353.) The rule finds succinct statement in that case (253 N. Y., at p. 351): ‘ Although authorized to lay its pipes in the public streets, the company takes the risk of their location and is bound to make such changes as the public convenience and security require, at its own cost and charge [cases cited] ’. * * *
 

 “
 
 So far as the project is concerned, it is plainly a public highway improvement since a highway can be carried across a body of water only by bridge or tunnel.
 
 The rule cited is peculiarly applicable to street changes required for improved use for the streets themselves. (Matter of Petition of Deering,
 
 93 N. Y. 361.) ” (Emphasis added.)
 

 This principle was changed in part by section 346 of the Highway Law: “ Telephone and telegraph wires * * * and water lines * * * may * * * be relocated in suitable facilities to be installed under or over and across any such thruway. The expense of such relocation and of installing such facilities shall be deemed to be part of the cost of the thruway ’ ’.
 

 The language of subdivision 14 of section 347 of the Highway Law indicates that the Legislature did not intend to extend the liability of the State beyond that of relocation costs for such public utility facilities. This section spells out the manner in
 
 *292
 
 which the Superintendent of Public Works shall appropriate
 
 ‘ ‘
 
 any property or interest therein, necessary for any and all purposes connected with the construction, reconstruction and maintenance of the thruway system of the state of New York. * * * The term ‘ property ’ as used in this section is defined to include * * * structures, franchises and interests in land * * * and any and all other things and rights usually included within the said term and includes also any and all interests in * * * easements * * # rights-of-way * * * and all other incorporeal hereditaments and every estate, interest or right legal or equitable.” Subdivision 14 of this section expressly states: “If the work of constructing, reconstructing and maintaining such state thruways and bridges thereon causes damage to property not acquired as above provided, the state shall be liable therefor,
 
 but this provision shall not be deemed to create any liability not already existing by
 
 statute.” (Emphasis added.) Not only is there no statute providing for such liability in this case, but the rule at common law imposed the expense of relocation or recovery and the alternative risk of loss on the utility company. (See
 
 Consolidated Edison Co.
 
 v.
 
 State of New York,
 
 302 N. Y. 711.)
 

 Matter of City of New York (Gillen Place)
 
 (304 N. Y. 215) is readily distinguishable from the present case. In the
 
 Gillen Place
 
 case there was a condemnation proceeding to enable New York City to perform a
 
 proprietary
 
 function. Here there was an acquisition of the property pursuant to section 347 of the Highway Law, with its provisions for compensation, to enable the State to exercise a
 
 sovereign
 
 function—the construction of a road system.
 

 Where, as here, the public utility does not relocate or retrieve its pipes retired from service, but leaves them in the public street because they had no salvage value, there is nothing for which the claimant may be recompensed. But where the public utility is not permitted to recover facilities, as in the case of the hydrants, it is entitled to an award for the salvage value.
 

 The contract, which is the subject of the second claim, is merely a relocation agreement providing the maximum allowance available to the water company in cases where it would relocate its facilities. It is, however, ineffective here, since the water company did not carry out the relocation.
 

 
 *293
 
 The judgment should be modified by reducing the sum allowed to $411.37, with interest.
 

 Chief Judge Desmond and Judges Dye, Fuld, Froessel and Van Voorhis concur; Judge Foster taking no part.
 

 Judgment modified in accordance with the opinion herein, and, as so modified, affirmed, without costs.